# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF NEW YORK
## CHAMBERS OF THE BANKRUPTCY JUDGE

HON. STEPHEN D. GERLING  
CHIEF U.S. BANKRUPTCY JUDGE

220 U.S. COURTHOUSE  
UTICA, NEW YORK 13501  
(315) 793-8111  
FAX: 793-8792

Richard Croak, Esq.  
Attorney for Debtor  
314 Great Oaks Blvd.  
Albany, NY 12203

Marc D. Hess, Esq.  
Attorney for Bank of America N.A.  
Steven J. Baum, PC  
P.O. Box 1291  
Buffalo, NY 14240-1291

Patrick Radel, Esq.  
Of Counsel for Bank of America N.A.  
Getnick, Livingston, Atkinson, Gigliotti, & Priore, LLP  
258 Genesee Street  
Utica, NY 13502

Maxsen D. Champion, Esq.  
Staff Attorney for Chapter 13 Trustee  
250 South Clinton Street, Suite 203  
Syracuse, New York 13202

Re:   SHEILA R. MARCELLO  
      CASE NO. 08-60346 Chapter 13

## LETTER DECISION and ORDER

On March 25, 2008, the Court heard oral argument and completed its hearing on the motion of Sheila Marcello ("Debtor"), filed pursuant to § 362(c)(3) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"), for an order extending the automatic stay in the current Chapter 13 case. The motion was brought on by an Order shortening time, dated March 11, 2008. Opposition to the motion was filed on behalf of the Bank of America, N.A. ("Bank") on March 18, 2008.

2

In her motion, Debtor alleges through her attorney, Richard Croak, Esq. ("Croak"), that her prior Chapter 13 case (07-63732), filed on October 26, 2007, was subsequently dismissed on January 8, 2008, because the Debtor failed to timely file a Chapter 13 plan. She further alleged that since the date of her prior filing she has obtained new employment and can propose a confirmable plan in the current case. In addition, she indicates that if the automatic stay is not extended in the current case, the Bank will be able to foreclose on her home and she will be unable "to enforce the Order of the Bankruptcy Court signed in a previous case." See Debtor's Motion to Extend Stay at ¶ 6.

In its opposition, the Bank alleges that in order to rebut the presumption of bad faith which arises upon the filing of a second bankruptcy case within one year of the dismissal of a prior case, the Debtor must show by clear and convincing evidence that there has been a substantial change of circumstances since the dismissal of the prior case. The Bank relies upon Code §§ 362(c)(3)(C)(i)(I) and (c)(3)(C)(i)(III). The Bank points out that the Debtor's moving papers simply allege that she has obtained "new employment" without any proof thereof, and further fails to allege the identity of the new employer, her monthly income or any other "substantial evidence" to rebut the presumption of bad faith. See Bank's Affirmation in Opposition at ¶ 8.

At oral argument, and in a subsequent affidavit filed on March 25, 2008 following the oral argument, Debtor's counsel indicated that at the time she filed the first case in October of 2007, she anticipated either obtaining new employment at an increased rate of pay or an increase in work from her current employer. He argued that when that did not occur post filing, he opted to hold off filing a Chapter 13 plan because she "needed to fund $500 per month in order to create a feasible plan." See Affidavit of Croak, sworn to March 25, 2008, at ¶ 5 ("Croak's Affidavit").

A review of the schedules, specifically Schedules I and J filed in Case 07-63732, together

with Schedules I and J filed in the current case, fail to reveal any significant change in circumstances insofar as the Debtor's financial ability to fund her current Chapter 13 Plan. Schedule J in Case 07-63732 indicated a monthly net income of $500, while Schedule J in the current case indicates monthly net income of $569.85.[1]

In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") introduced an entirely new concept to consumer bankruptcy, the limited stay or no stay provisions found in Code §§ 362(c)(3) and (c)(4) where the consumer debtor is a so-called "repeat filer." Here the Debtor's second Chapter 13 filing within approximately a month and a half after the dismissal of her prior Chapter 13 case brought her squarely within the crosshairs of Code § 362(c)(3). As with many of the de novo provisions of BAPCPA, Code §§ 362(c3) and (c)(4) have generated numerous decisions from bankruptcy judges around the country. One of the earliest courts to deal with the issue was the Bankruptcy Court for the District of Utah. In the case of *In re Galanis*, 334 B.R. 685 (Bankr. D. Utah 2005), U.S. Bankruptcy Judge William T. Thurman formulated a seven part test to determine whether or not a debtor has rebutted the presumption of bad faith by clear and convincing

---

[1] The Court does note that the Debtor's gross monthly income did increase by approximately $735 between Case No. 07-63732 and the current case. *Compare* Schedule I in Case No. 07-63732 with that of Case No. 08-60346. Attached to Croak's Affidavit is a copy of a pay stub for the Debtor covering the period 1/27/08 to 2/09/08 and reflecting net bi-weekly pay of $645.73 for 80 hours of work over a two week period. (A review of the docket in the new case also indicates that this was the only payment advice from Conifer Park, Inc. filed pursuant to Code §§ 521(a)(1)(B)(iv).) Schedule I also identifies $416 in overtime pay, for an estimated total net monthly pay of $1,695.42 after deductions. Nonetheless, Schedule I in her current case identifies her employer as "Stewart's." It is not clear why Conifer Park, Inc. was not listed as her employer in filing the current case on February 24, 2008. The Court also notes that her expenses have also increased from $2,448.55 in the prior case to $3,299.55 in the current case. *See* Schedule J in both cases. Included in the increased expenses is an increase in heating costs of $130 and an increase in food costs from $390 to $700 per month, as well as increases in laundry and transportation and the addition of $100 per month of her husband's debts.

evidence. While *Galanis* has not been followed by all post-BAPCPA courts, it nevertheless stands as somewhat of a beacon in an otherwise turbulent sea.

*Galanis'* first factor focuses on the time lapse between the two cases and concludes that the shorter the duration between the filings, the greater the likelihood that the second was not filed in bad faith, particularly where the debtor did not incur significant additional debt in the interim between the two cases. Here the time lapse was minimal and a review of the Debtor's schedules filed in each case reveals only one additional unsecured creditor listed in the current case. This factor would seem to favor the Debtor.

The second *Galanis* factor examines the type of debts listed in a debtor's schedules. In the current case the Debtor lists only the Bank mortgage and two unsecured creditors, one of which appears to be a credit card obligation.[2] From the *Galanis* perspective, this factor would appear to suggest good faith.

The third *Galanis* factor focuses on the motivation for filing the second case. The only information available to the Court on this factor is Debtor's attorney's contention that at the time of her filing in the fall of 2007, her disposable income was insufficient to support a feasible Chapter 13 plan and her anticipated increase in that income did not materialize in time to stave off dismissal of that case. It is asserted that her current filing is based on a significant increase in her gross monthly income, notwithstanding the fact that the increase in her critical disposable income is minimal. This factor would appear to somewhat favor the Debtor.

The fourth *Galanis* factor looks at how the current case impacts on the Debtor's creditors-

---

[2] The Court notes that the Debtor previously filed a Chapter 13 case on October 15, 2005 (Case No. 05-19746/07-60542), which case was voluntarily converted to a Chapter 7 on December 12, 2006, and the Debtor received a discharge in the converted case on March 21, 2007.

                        Document      Page 5 of 7

5

all three of them. Obviously, as regards the Bank, it is frustrated in its effort to foreclose its mortgage. It appears that the Debtor accumulated a significant amount of prepetition mortgage arrears. The Chapter 13 plan in her current case indicates that those arrears total some $21,754, suggesting that the Debtor has not made regular mortgage payments for a relatively long period of time. This factor does not favor the Debtor.

The fifth factor suggested by *Galanis* is why the Debtor's prior Chapter 13 case was dismissed. Debtor's attorney contends that the Debtor's failure to file a plan, which led directly to the dismissal of the 2007 case, was due to the inability of the Debtor to obtain the increased income anticipated at the time of filing. As the attorney expresses it, "I was possibly too careful at this time, but considering the debtor's very difficult finances, I decided to wait on filing the plan until she had new employment." *See* Croak's Affidavit at ¶ 6. While that explanation seems plausible at first blush, the Court wonders why the attorney did not, at the very least, affirmatively seek an extension of time to file a plan pursuant to Federal Rule of Bankruptcy Procedure 3015(b), or alternatively, respond to the Trustee's dismissal motion in the prior case with a request for an extension. One could speculate that the 2007 case was filed as a delaying tactic with no real intent or ability to file a feasible plan. This factor does not favor the Debtor.

The sixth *Galanis* factor considers the likelihood that the Debtor will be able to comply with the monthly payments of $570 required by her proposed Chapter 13 Plan. The Court has no information on the status of the Debtor's payments, though it notes that the first Plan payment would not have been due until March 25, 2008, the day of the hearing seeking an extension of the automatic stay. *See* Code § 1326(a)(1). As noted previously, Schedules I and J, filed with her current petition,

indicate that her disposable income is $569.85.[3] Based upon the limited information currently available, this factor appears to favor the Debtor.

The final *Galanis* factor is whether or not any creditor or the trustee has objected to the debtor's request to extend the stay. Here the Bank has clearly objected, basing its objection primarily on the Debtor's failure to provide any detailed proof of a change of circumstances between the 2007 filing and the current case. The Trustee has not objected, nor have either of the other two listed creditors though they all appear to have been served with Debtor's motion.

The Court, based on the totality of circumstances and utilizing the *Galanis* factors, believes that the Debtor has minimally rebutted the presumption of lack of good faith by clear and convincing evidence; however, the Court's inquiry does not end here. The Court believes that in extending the stay it can do so based on certain terms and conditions. See Code § 362(c)(3)(B); *see also In re Baldassaro*, 338 B.R. 178 (Bankr. D.N.H. 2006) in which the bankruptcy court found itself faced with facts similar to this case. As did the *Baldassaro* court, this Court will condition the extension of the stay by requiring the Debtor to make her regular postpetition mortgage payment to the Bank beginning with the payment coming due in April 2008 in accordance with the terms of the mortgage and to continue to make the regular monthly mortgage payment in a timely fashion, as provided for in the mortgage, for the following six months. In the event that the Debtor fails to make any of the mortgage payments on a timely basis within the six month period, the Bank may obtain relief from the stay by filing an affidavit of default and proposed order with the Court without any further notice to the Debtor or her attorney. Thereafter, in the event of Debtor's default in making any ongoing

---

[3] Since the Debtor appears to be a "below-median" debtor within the meaning of Code § 1325(b)(3), her disposable income is calculated utilizing these Schedules, rather than Code § 707(b)(2).

7

monthly mortgage payments, the Bank will have to file a motion for stay relief pursuant to Code § 362(d). To facilitate payment in accordance with this Order, the Bank shall file with the Court and serve upon the Debtor's attorney and the Debtor, a statement of the regular monthly mortgage payment and the address to which the payment should be sent. Said statement shall be filed and served within five days of the date of this Order.

The Bank has also requested that the Debtor be required to pay its attorney's fees in the sum of $500. The Court will grant that request based on its being oversecured, as reflected on Schedule D, attached to Debtor's petition. *See* Code § 506(b). The Bank's attorney's fee shall be paid in full not later than the end of the six month period referred to above.

Finally, the Court shall extend the stay to all other creditors who were served with the Debtor's motion without condition.

IT IS SO ORDERED.

Dated at Utica, New York

this 27th day of March 2008

STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge